UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INMATES OF THE RHODE ISLAND TRAINING SCHOOL, Plaintiffs, | : | |
| v. | : | C.A. No. 71-4529-L |
| PATRICIA MARTINEZ, ET AL., Defendants. | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTIONS TO INTERVENE AND FOR APPROVAL OF THE PAYMENT AND DISBURSEMENT OF ATTORNEYS' FEES AND COSTS**

Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiffs and their counsel from the American Civil Liberties Union Foundation ("ACLU") and the American Civil Liberties Union Foundation Rhode Island ("ACLU-RI") submit this memorandum in support of their motions seeking to intervene, and seeking approval of the payment and disbursement of attorneys' fees and costs in the amount of $201,578.89. For reasons stated herein, Plaintiffs and their counsel request that this Court approve the disbursement of fees that have been held in escrow and/or withheld from payment since the decision of the Rhode Island Supreme Court in In re Rule Amendments, 815 A.2d 47 (R.I. 2002). Plaintiffs and their counsel further request declaratory relief in the form of a decision declaring that the ACLU and its affiliates are entitled to recover attorneys' fees pursuant to Section 1988, notwithstanding any contrary state law, rule, or court decision.

**BACKGROUND**

Commenced in 1971, this litigation is a landmark civil rights action filed pursuant to 42 U.S.C. § 1983, which exposed the "cruel iron[ies]" of life inside the Rhode Island Boys' Training School and marked the beginning of a long legal battle over the conditions of confinement for juvenile offenders. See Inmates of the Boys' Training School v. Affleck, 346 F. Supp. 1354, 1369 (D.R.I. 1972). The Plaintiffs -- who were and are the prevailing parties -- are a class of juveniles residing at the facility. The members of this class are in constant flux, as children enter and leave the facility.

This case has continued through the advocacy work of the ACLU and the ACLU-RI, both of which are non-profit organizations whose shared purpose is to defend and preserve the principles of liberty and equality guaranteed by Federal and state constitutions and laws. (See Stipulation of Facts ("Stipulation"), attached hereto as Exhibit A, at ¶ 1.) Both the ACLU and ACLU-RI litigate many cases each year involving civil rights, and the court-awarded attorneys' fees resulting from such litigation are a significant source of funding used to support the organizations' ongoing litigation activities (Id. at ¶ 2.) At this time, attorneys from both organizations, and outside attorneys working on their behalf, continue to work on this case, representing Rhode Island's incarcerated youth. Staff attorneys with the ACLU National Prison Project and volunteer cooperating counsel of the ACLU-RI represent the Plaintiff class by monitoring the Defendants' compliance with the consent decree entered in this case.

Because this is a § 1983 civil rights suit, attorneys' fees are appropriate under 42 U.S.C. § 1988. For many years, attorneys' fees in this case have been paid to the ACLU for services performed by staff attorneys who are salaried employees of the ACLU, including its National

Prison Project.[1] (Id. at ¶ 5.) Fees also may be generated in this case by private, volunteer cooperating attorneys working on behalf of the ACLU-RI. (Id. at ¶ 5.) Ideally, fees paid to such private, volunteer attorneys would be shared with the ACLU-RI pursuant to retainer agreements, as had been the case for many years prior to the aforementioned decision in In re Rule Amendments. (Id. at ¶ 5).

Beginning in 2000, however, the propriety of such fee-sharing arrangements became an issue under certain portions of the Rhode Island Rules of Professional Conduct. A June 14, 2000 opinion of the Rhode Island Supreme Court Ethics Advisory Panel stated that it was ethically improper under Rules 5.4(a) and 7.2(c), as written, for a lawyer who undertakes pro bono representation in litigation sponsored by the ACLU-RI to pay a percentage of court-awarded attorneys' fees to the ACLU-RI. Although the panel concluded that such fee-sharing was impermissible under Rhode Island's rules, it further opined that "prohibitions against fee-sharing with non-lawyers ought not apply to the sharing of court-awarded fees in RI-ACLU sponsored pro bono litigation." See R.I. Ethics Advisory Panel, Op. No. 2000-05, Request No. 801 at 3 (2000) (emphasis added). Because the panel was constrained by the language of Rhode Island's rules, it could not render a decision conforming to its opinion, despite recognizing that "applying the prohibitions of Rule 5.4(a) and Rule 7.2(c) in this context bears little, if any, relation to the underlying purposes of these two rules, or to the purpose of the fee-shifting statutes which encourage the enforcement and advancement of civil liberties." Id.

Two years later, the Rhode Island Supreme Court, in response to a request for consideration of amendments to Rules 5.4(a) and 7.2(c), declared that those Rules prohibit non-lawyers -- which it said included non-profit organizations such as the ACLU and ACLU-RI --

[1] ACLU staff attorneys are full-time, salaried employees of the ACLU who litigate nationwide on behalf of the organization.



PRV_763147_5/CFTURCOTTE

from recovering or receiving attorneys' fees awarded in litigation in Rhode Island. In declining to amend the Rules, the Rhode Island Supreme Court rejected the recommendations of its Ethics Advisory Panel, as well as the opinion of the American Bar Association. See 815 A.2d at 52.[2] The Court further declared that the receipt of fees by a non-profit organization providing legal services through employee attorneys, even if part of a fee-sharing agreement, could constitute unauthorized practice of law in violation of Rhode Island General Laws § 11-27-3. Id., at 49-50.

As a result of the Supreme Court opinion, attorneys' fees earned in this case since March 2002 have not been disbursed to the ACLU and have instead been accrued in two ways. For approximately two years after the decision, fees and costs totaling $143, 246.07 were paid but held in escrow by the ACLU pending resolution of the issues raised by In re Rule Amendments. (See Stipulation at ¶ 6.) In early 2004, Defendants ceased making such payments to the ACLU. Since that time, Defendants' practice has been to approve statements submitted by counsel for the ACLU on a quarterly basis, but to withhold payment pending resolution of the issues raised by In re Rule Amendments. (Id., at ¶ 6.) As of September 30, 2005, the amount agreed to but undisbursed pursuant to this practice was $58, 332.82. (Id.) In total, funds in the amount of $201, 578.89 remain undisbursed, the entirety of which is owed to the ACLU's National Prison Project. (Id. at ¶ 7.)

Counsel from the law firm of Edwards Angell Palmer & Dodge, LLP is serving as special counsel in this action to the ACLU and the ACLU-RI, for the purpose of securing the disbursement of attorneys' fees on grounds set forth herein. Initially, that included the filing of a

---

[2] The Court acknowledged that the ABA Standing Committee on Ethics and Professional Responsibility had, in ABA formal opinion 93-374, declared that it was not improper for a lawyer who undertakes pro bono representation at the request of a nonprofit organization to share court-awarded attorneys' fees with that organization. Despite this acknowledgment, the Rhode Island Supreme Court stated that the ABA's opinion "simply does not apply to members of the Rhode Island Bar practicing in this state," and that such fee-sharing would violate Rhode Island's Rules of Professional Conduct and could even constitute criminal conspiracy. 815 A.2d at 52.

declaratory judgment action in this Court captioned American Civil Liberties Union, et al. v. Patrick Lynch, et al., C.A. No. 05-060. The parties in that case subsequently agreed to the entry of a Consent Stay Order entered by District Judge Mary M. Lisi. Judge Lisi recommended that counsel consider opportunities to seek resolution of the underlying legal issues in a case in which the disbursement of fees was ripe and pending, such as this case. Thereafter, at a conference in chambers on September 15, 2005, this Court agreed to hear and decide the attorneys' fees issue in the instant matter. The ACLU and ACLU-RI have therefore filed this motion, along with an accompanying motion by special counsel to intervene for the purpose of securing a ruling on this important underlying legal issue affecting civil rights litigation in this court.[3]

## ARGUMENT

### I. Rhode Island's Fee-Sharing Rules Cannot Constitutionally be Read to Bar the Relief Sought in this Application.

#### A. If Applied in this Case, Rhode Island's Fee-Sharing Rules Conflict with Federal Law and are Therefore Invalid Under the Supremacy Clause.

The Supremacy Clause of the United States Constitution provides that the Constitution and laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Law of any State to the Contrary notwithstanding." U.S. Const. Art. VI. In accordance with the Supremacy Clause, "'[w]hatever power a state may have is subordinate to supreme national law.'" McKenna v. Williams, 874

---

[3] The moving parties have submitted this memorandum in support of their primary motion, seeking approval of the payment and disbursement of attorneys' fees and costs, and also in support of their related motion to intervene pursuant to Fed.R.Civ.P. 24. The moving parties respectfully submit, for reasons made clear throughout this memorandum, that the ACLU and the ACLU-RI have an undeniable "interest relating to the property or transaction which is the subject of the [motion]," and that these interests are not fully or adequately represented by other existing parties. See Fed.R.Civ.P. 24(a)(2). The ACLU and ACLU-RI only seek leave to intervene for these limited purposes, and not for any other purpose. Accordingly, for reasons set forth in this memorandum, and to be more fully articulated at any hearing on the instant motions, the ACLU and ACLU-RI respectfully request that this Court grant their motion to intervene, for purposes of addressing the underlying legal issues concerning the payment and disbursement of attorneys' fees and costs, which continue to have ongoing interest for those organizations in this Court.

A.2d 217, 238 (R.I. 2005) (quoting Hines v. Davidowitz, 312 U.S. 52, 68 (1941)). In other words, "'the [U.S.] Constitution and the laws passed pursuant to it are the supreme laws of the land, binding alike upon states, courts, and the people . . . .'" Id. (quoting Testa v. Katt, 330 U.S. 386, 391 (1947)). As such, state laws and rulings may neither interfere with nor conflict with Federal law. See id. at 238.

Conflicts between state and Federal laws can be both facial and as applied. Inquiry into the existence of conflict "requires [the court] to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." Jones v. Rath Packing Company, 430 U.S. 519, 526 (1976). Under the Supremacy Clause, courts must strike down any legislation that "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. (quoting Hines, 312 U.S. at 67). Further, rights and expectations established under federal law are to be protected, under the Supremacy Clause, against the "frustration and erosion of the congressional policy embodied in the federal rights." Jackson v. Rapps, 746 F. Supp. 934, 941 (W.D. Mo. 1990) (citations omitted). Even where a lawmaking body, in passing a law, had some purpose in mind other than frustration, the state law may unconstitutionally conflict with federal law. See Perez v. Campbell, 402 U.S. 637, 652 (1971). The "relative importance to the State of its own law is not material when there is a conflict with a valid federal law." Raskin v. Moran, 684 F.2d 472, 475 (7th Cir. 1982) (quotations omitted). Thus, "any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." Perez, 402 U.S. at 652 (emphasis added).

This Court has already acknowledged that it has the authority to interpret the Rules of Professional Conduct governing attorneys practicing in this Court. "[O]ur interpretation of each

rule 'as it applies to federal . . . law [and] practice should be and is a matter of federal law.'" In re Egbert, 184 F.R.D. 26, 30 (D.R.I. 1999) (quoting Grievance Comm. for the S. Dist. Of New York v. Simels, 48 F.3d 640, 646 (2d Cir. 1995)). Thus, there is no question that this Court may decide that the Rhode Island Supreme Court's ruling in In re Rules, governing fee-sharing with non-lawyers, is inconsistent with Federal law. It is also well established that state rules of professional conduct for attorneys may not be applied in such a way as to violate Federal law. "The Supreme Court of the United States has regularly struck down state statutes or rules governing the legal profession when they conflict with federal law." American Civil Liberties Union/Eastern Missouri Fund v. Miller, 803 S.W.2d 592, 601 (Mo. 1991) (Blackmar, C.J., dissenting);[4] see also United Transp. Union v. State Bar of Michigan, 401 U.S. 576 (1971); United Mine Workers of America, District 12 v. Illinois State Bar Ass'n, 389 U.S. 217 (1967); Supreme Court of New Hampshire v. Piper, 470 U.S. 274 (1985).

Section 1988 provides that "in any action or proceeding to enforce a provision of section 1981, 1981a, 1982, [or] 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee . . . ." 42 U.S.C. § 1988(b). "The purpose of awarding an attorney's fee to a prevailing plaintiff is to encourage individuals to vindicate the policies underlying the civil rights and anti-discrimination laws . . . even though the pecuniary damages are modest and/or the claimant lacks resources to pay counsel." Carter v. State of Rhode Island Department of Corrections, 25 F. Supp.2d 24, 25 (D.R.I. 1998). Because "a vast majority of the victims of civil rights violations cannot afford legal counsel," many civil rights

[4] The Miller case, and the dissenting views expressed in that decision, are of particular importance to the instant action. In that case, the Supreme Court of Missouri denied the Missouri ACLU affiliate its share of attorneys' fees because of Missouri's ethical prohibitions against fee-splitting. See American Civil Liberties Union/Eastern Missouri Fund v. Miller, 803 S.W.2d 592, 601 (Mo. 1991). Notwithstanding the Missouri Supreme Court decision in Miller, the U.S. District Court for the Western District of Missouri in Susman v. Missouri, No. 91-4429-CV-C-5, granted summary judgment to the plaintiff, and effectively enjoined Missouri from enforcing its ethics rules as they applied to fee sharing with the ACLU, and allowed the subject fees to be shared. Id. (copy attached hereto as Exhibit B).

cases could not be brought if victims had to hire their own attorneys. See House Judiciary Comm. Report on the Civil Rights Attorney's Fees Awards Act of 1976, H.R. Rep. No. 94-1558, at 1-2 (1976). Section 1988 enables indigent persons to achieve the quality of representation available to those in more secure financial situations, because, as stated by Justice Brennan, "the promise of a forum for vindication of one's civil rights is meaningless absent an ability to obtain adequate representation." North Carolina Dep't of Transp. v. Crest Street Cmty. Council, 479 U.S. 6, 19 (1986) (Brennan, J., dissenting).

Organizations like the ACLU and ACLU-RI, which represent parties in civil rights suits, play a critical role in supporting and sponsoring civil rights litigation. See Sprogis v. United Air Lines, Inc., 517 F.2d 387, 391 (7th Cir. 1975). Thus, fee awards are essential to the full enforcement of the Federal civil rights statutes, and, consequently, to the organizations that advocate for enforcement. North Carolina Dep't of Transp., 479 U.S. at 19 (Brennan, J. dissenting) (citing S.Rep. No. 94-1011, p. 5 (1976), U.S.Code Cong. & Admin. News 1976, p. 5913). "[T]he effects of such fee awards are ancillary and incident to securing compliance with these laws, and . . . fee awards are an integral part of the remedies necessary to obtain such compliance." Id. (quoting S.Rep. No. 94-1011, p.5 (1976), U.S.Code Cong. & Admin. News 1976, p.5913). "Congress endorsed allowing fees to public interest groups when it was considering, and passed, the Civil Rights Attorney's Fees Awards Act." New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 70 n.9 (1980); see also Missouri v. Jenkins, 491 U.S. 274, 284 n.6 (1989) (awarding fees to NAACP because, without such compensation, attorneys could be deterred from bringing civil rights cases, thus defeating congressional intent of § 1988); Palmigiano v. Garrahy, 616 F.2d 598, 601-02 (1st Cir. 1980) (upholding award of fees to ACLU over defendants' argument that the award would constitute a windfall, because it was "consistent

with the legislative history" of § 1988 and "serve[d] the clearly expressed legislative purpose of encouraging private enforcement of civil rights laws. . . .[T]he [ACLU]. . . has finite resources, and a full fee award will enable it to undertake further civil rights litigation.") (internal citations omitted).

Fee awards to the ACLU directly serve these underlying purposes.[5] Brandenburger v. Thompson, 494 F.2d 885 (9th Cir. 1974). For instance, in Brandenburger, the Ninth Circuit overturned a decision of the district court that denied fees because the plaintiff "was represented, without charge, by the American Civil Liberties Union." Id. at 887. Instead, the Court stated:

> an award of attorneys' fees to the organization providing free legal services indirectly serves the same purpose as an award directly to a fee paying litigant. Of course, the award should be made directly to the organization providing the services to ensure against a windfall to the litigant.

Id. at 889 (internal citations omitted); see also McLean v. Arkansas Bd. of Educ., 723 F.2d 45, 48-50 (8th Cir. 1983) (affirming § 1988 fees award to the ACLU and dismissing objections that such an award would violate standards of professional conduct); Tillman v. Wheaton-Haven Recreation Assoc. Inc., 517 F.2d 1141, 1148 (4th Cir. 1975) (reversing denial of fees to the ACLU on the basis that neither counsel nor litigants would suffer pecuniary loss absent a fees award); Fairley v. Patterson, 493 F.2d 598, 607 (5th Cir. 1974) (reversing denial of fees predicated on attorney's agreement that foundation that employed him would receive fees).

Accordingly, "legal services organizations may recover fees under the Civil Rights Attorney's Fees Award Act," see Lund v.Affleck, 587 F.2d 75, 76 (1st Cir. 1978), and "[i]t is

---

[5] Class action lawsuits such as those undertaken by the ACLU frequently involve a class of plaintiffs that is fluid. In this case, the residents of the Training School are constantly changing. They are a population of juveniles whose make-up changes from day to day and year to year. Given the ever-changing demographic of Plaintiffs in this case, it would be impossible and absurd to award attorneys' fees directly to the plaintiffs, and such an award would defeat the purpose of Section 1988.

well-settled that the ACLU is entitled to an award of attorney's fees under § 1988." Love v. Mayor, City of Cheyenne, Wyoming, 620 F.2d 235, 237 (10th Cir. 1980); see also Ramos v. Lamm, 713 F.2d 546, 550-52 (10th Cir. 1983). Likewise, in Thompson v. Dept't of Hous. and Urban Dev., No. MGJ-95-309, 2002 WL 31777631, at * 8 (D. Md. Nov. 21, 2002), the ACLU was awarded attorneys' fees when it represented multiple plaintiffs in a complex racial discrimination case. When awarding those fees, the court stated:

> Undertaking a case of this magnitude on behalf of the least privileged and influential of Plaintiffs. . . with the knowledge that the Defendants will be government entities with far greater resources. . . and that the case will be prolonged, and the outcome by no means certain, virtually precludes representation by attorneys other than public interest organizations such as the ACLU. . . .

Id.

Nothing in the history and application of § 1988 suggests that an attorney working on behalf of the ACLU or its affiliates in civil rights litigation may not share attorneys' fees with the organization that sponsored the litigation. Such a prohibition would penalize the organization for doing exactly what Congress intended when it enacted § 1988. A reality of public interest litigation is that few private attorneys can afford to devote sufficient time and resources to pro bono matters. See generally Roy D. Simon, Fee Sharing Between Lawyers and Public Interest Groups, 98 Yale.L.J. 1069, 1112 n. 245 (1989). As a result, public interest legal organizations sponsor much of the civil rights litigation in this country. When attorneys' fees are awarded to prevailing plaintiffs, such organizations, including the ACLU, typically require their staff attorneys to turn the fees over to the organization. See 98 Yale.L.J. at 1070. When they do not have their own staff of litigators, such organizations often utilize the services of private, cooperating attorneys. See 98 Yale.L.J. at 1070 n.3; see also Stipulation at ¶ 2.

In sum, prohibiting the sharing of attorneys' fees with public interest organizations such as the ACLU or the ACLU-RI clearly frustrates the purpose of § 1988. Such interference with Federal law violates the Supremacy Clause and should not prevent the disbursement of attorneys' fees in this case and others like it. Accordingly, while it is perfectly appropriate for the Rhode Island Supreme Court to dictate the interpretation of the Rules of Professional Conduct governing attorneys in this state as a matter of state law, it is equally appropriate for this Court to adopt its own independent interpretation of those Rules as a matter of Federal law. See In re Egbert 184 F.R.D. at 26. In so doing, this Court does not "second-guess" the Rhode Island Supreme Court, or do any violence to that court's unique province to regulate the practice of law in Rhode Island. Rather, this Court simply recognizes a supreme body of Federal law governing the sharing and disbursement of attorneys' fees under § 1988 with certain unique public interest groups, such as the ACLU and the ACLU-RI. For those reasons, this Court can and should authorize the disbursement of fees as set forth above, notwithstanding the Rhode Island Supreme Court's decision in In re Rule Amendments.

**B. Rhode Island's Fee-Sharing Rules Violate the First Amendment as Applied in this Case.**

Restrictions on litigation by public interest organizations implicate free speech protections inherent in the First Amendment. See NAACP v. Button, 371 U.S. 415 (1963); In re Primus, 436 U.S. 412 (1978). In Button, the Supreme Court reversed a state court decision that found the Virginia NAACP to be in violation of the state's prohibitions against certain modes of solicitation of legal business when NAACP staff attorneys contacted parents of children enrolled in segregated Virginia schools and offered to represent them in an anti-discrimination suit. 371 U.S. at 421. The Court found for the NAACP, holding that "the activities of the NAACP, its affiliates and legal staff . . . are modes of expression and association protected by the First and



PRV_763147_5/CFTURCOTTE

Fourteenth Amendments which Virginia may not prohibit, under its power to regulate the legal profession." Id. at 428-29.

Criticizing the use of professional rules as a means of curtailing the NAACP's activities, the Court emphasized the crucial distinction between public interest and private litigation and the need to apply professional rules differently to the two groups.

> Resort to the courts to seek vindication of constitutional rights is a different matter from the oppressive, malicious, or avaricious use of the legal process for purely private gain. Lawsuits attacking racial discrimination. . . are neither very profitable nor very popular. They are not an object of general competition among Virginia lawyers; the problem is rather one of an apparent dearth of lawyers who are willing to undertake such litigation.

Id. at 443 (footnote omitted). As a result, and because of the First Amendment violations inherent in the rules' application to the NAACP, the Court ruled the application of the anti-solicitation rules to the NAACP to be unconstitutional.

Nearly fifteen years later, in In re Primus, the Supreme Court again addressed a state's rules against solicitation of legal business, this time as applied to the ACLU. 436 U.S. 412. It held that South Carolina's disciplinary rules could not constitutionally apply to a cooperating ACLU attorney who informed a woman, via letter, of the opportunity for legal assistance relating to her having been sterilized as a condition of receiving public medical assistance. Id. at 412. The Court emphasized that while states enjoy "broad power to regulate the practice of professions within their boundaries," and have a particular interest in regulating the conduct of lawyers, id. at 422, rules may not be applied so as to interfere with "collective activity undertaken to obtain meaningful access to the courts," as such activity is "a fundamental right within the protection of the First Amendment," id. at 426 (citations omitted).

Both the Button and Primus courts emphasized that state rules governing the legal profession may not be applied to public interest organizations when doing so would be inconsistent with the vindication of superior Federal rights. As stated in Primus, there is little "basis for equating the work of lawyers associated with the ACLU or the NAACP with that of a group that exists for the primary purpose of financial gain through the recovery of counsel fees." 436 U.S. at 431. In particular, rules governing the legal profession, as applied to public interest organizations, "have a distinct potential for dampening the kind of 'cooperative activity that would make advocacy of litigation meaningful' . . . as well as for permitting discretionary enforcement against unpopular causes." Id. at 433 (quoting Button, 371 U.S. at 438).

## II. The Rooker-Feldman Doctrine is Inapplicable.

Plaintiffs and their counsel anticipate that the State may argue, as it has in other contexts, that this Court is prohibited from addressing this issue by the so-called Rooker-Feldman doctrine. "The Rooker-Feldman doctrine prohibits federal district and circuit courts from reviewing state court judgments." Sheehan v. Marr, 207 F.3d 35, 39 (1st Cir. 2000). The doctrine also "forecloses lower federal court jurisdiction over claims that are 'inextricably intertwined' with the claims adjudicated in a state court." Id. at 40. The Rooker-Feldman doctrine is confined to cases "brought by state-court losers complaining of injuries caused by state-court judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S.Ct. 1517, 1521-22 (2005). However, in the instant case, a state court has not adjudicated the specific claims and issues raised by Plaintiffs and their counsel in this motion. Consequently, Plaintiffs are not seeking "appellate-style" review of an adverse decision, nor has there even been a judgment with which Plaintiffs' claim could be "inextricably intertwined."

The issue of the constitutionality of prohibiting the payment of attorneys' fees to the ACLU has not been addressed directly by the highest court of the State of Rhode Island. Instead, In re Rules was rendered in response to a request for consideration of amendments to the Rules of Professional Conduct made by the Ethics Advisory Panel and another attorney. There were no adverse parties with an actual case or controversy adjudicated in In re Rules because of the nature of the proceeding. Hence, this motion is not akin to a situation in which a state court loser has "repaired to federal court to undo the [state] court judgment," nor is it an effort by the ACLU to seek appellate review of a state court decision. Exxon Mobil Corp., 125 S.Ct. at 1526.

Even if In re Rule Amendments were the type of judgment that could give rise to a Rooker-Feldman argument -- and Plaintiffs maintain that it is not -- the fact that Plaintiffs and the ACLU were not parties to that case is fatal to such an argument. "[B]ecause a non-party to a state suit cannot seek Supreme Court review of a state court decision, it is therefore free to proceed in federal court so long as it does not launch a direct attack on the state judgment." Johnson v. Grandy, 512 U.S. 997, 1004-06 (1994); see Narragansett Indian Tribe of R.I. v. Banfield, 294 F. Supp.2d 169, 174 (D.R.I. 2003). In the present case, Plaintiffs and the ACLU are simply seeking to have this Court approve the disbursement of attorneys' fees as a matter of Federal law, in a case that long predates the Rhode Island Supreme Court decision in In re Rule Amendments. They and have not "launched a direct attack" on a state judgment. As exemplified in In re Egbert, this Court has the right to interpret state rules governing the practice of law as they apply to Federal practice. In re Egbert, 184 F.R.D. at 30.

Moreover, in District of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 483-484 (1983), one of the two cases after which the Rooker-Feldman doctrine is named, the Supreme Court recognized a distinction "between seeking review in a federal district court of a state

court's final judgment in a bar admission matter and challenging the validity of a state bar admission rule." The Court held that "United States District Courts . . . have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case." Id. at 486. In so holding, the Court stated that "because the proceedings giving rise to the rule are non-judicial the policies prohibiting United States District Court review of final state court judgments are not implicated." Id. Other courts have followed this reasoning and have emphasized the distinction between challenging a state rule and challenging a state court's application of a rule in a particular case. See, e.g., Hachamovitch v. DeBuono, 159 F.3d 687, 694 (2d Cir. 1998); Van Harken v. Chicago, 103 F.3d 1346, 1349 (7th Cir. 1997).

The Supreme Court's reasoning in Feldman is equally applicable in the present case, since the moving parties, by requesting approval of disbursement of attorneys' fees, are challenging the constitutionality of state rules of professional conduct as applied in Federal court, as a matter of Federal law, rather than challenging a state court's application of those rules in a prior state case. Consequently, this Court has subject matter jurisdiction over Plaintiffs' claim.

## **Conclusion**

For reasons set forth herein, Plaintiffs and their counsel from the ACLU and ACLU-RI request this Court to enter an Order authorizing the disbursement of attorneys' fees in the amount of $201,578.89 to the ACLU and/or ACLU-RI, as appropriate. Plaintiffs and their counsel from the ACLU and ACLU-RI further request a declaration of this Court that the ACLU and its affiliates are entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988, notwithstanding any contrary state law, rule, or court decision.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION and AMERICAN CIVIL LIBERTIES UNION FOUNDATION RHODE ISLAND

By their Attorneys,

Mark W. Freel (#4003)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)

PLAINTIFFS INMATES OF THE RHODE ISLAND TRAINING SCHOOL

By their Attorneys,

David C. Fathi*
Senior Staff Counsel
ACLU Foundation, Inc.
915 15th St. N.W., 7th Floor
Washington, D.C. 20005
(202) 548-6609
*Practice limited to the federal courts.

John W. Dineen
Yesser, Glasson & Dineen
One Providence Washington Plaza, 5th Floor
Providence, RI 02903
(401) 331-3550 Ext. 2

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2006, a true and accurate copy of the within Memorandum was mailed, postage prepaid, to:

Rebecca Tedford-Partington
Office of the Attorney General
150 South Main Street
Providence, RI 02903

Kevin J. Aucoin
Chief Legal Counsel
Department of Children, Youth and Families
101 Friendship Street
Providence, RI 02903

[signature]