UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

INMATES OF THE RHODE ISLAND TRAINING SCHOOL,
Plaintiffs

v. C.A. No. 71-4529 L

PATRICIA MARTINEZ, et al.,
Defendants

**OBJECTION TO MOTION TO APPROVE DISBURSEMENT OF ATTORNEYS' FEES**

Now come the State defendants and object to the Motion to Approve Disbursement of Attorneys' Fees. A memorandum in support hereof is attached.

Respectfully submitted,

Patrick C. Lynch, Attorney General
David Curtin, Chief Disciplinary Counsel
By Their Attorney

PATRICK C. LYNCH
ATTORNEY GENERAL

Rebecca Tedford Partington #3890
Deputy Chief--Civil Division
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400 x 2303
Fax (401) 222-2995

Department of Children Youth And Families
By Their Counsel

Kevin J. Aucoin, Executive Chief Legal Counsel
Department of Children, Youth and Families
101 Friendship Street
Providence, RI 02903
Tel: (401) 528-3570
Fax: (401) 528-3566

**CERTIFICATION**

I, the undersigned, hereby certify that a copy of the foregoing document was mailed, postage prepaid, on this 4Th day of April, 2006 to the person or persons indicated below:

Carol Collins

Mark W. Freel, Esquire
Edwards Angell Palmer & Dodge, LLP
2800 Financial Plaza
Providence, RI 02903

David C. Fathi, Esquire
Senior Staff Counsel
ACLU Foundation, Inc.
915 15th St. N.W., 7th Floor
Washington, DC 20005

John W. Dineen, Esquire
Yesser, Glasson & Dineen
One Providence Washington Plaza
5th Floor
Providence, RI 02903

FILED
APR 4 2006
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

INMATES OF THE RHODE ISLAND TRAINING SCHOOL,
Plaintiffs

v. C.A. No. 71-4529 L

PATRICIA MARTINEZ, et al.,
Defendants

**MEMORANDUM IN SUPPORT OF OBJECTION TO MOTION TO APPROVE DISBURSEMENT OF ATTORNEYS' FEES**

Introduction

This Memorandum of Law supports Defendants' Objection to Motion to Approve Disbursement of Attorneys' Fees. Plaintiffs "and their counsel"[1] from the ACLU and ACLU-RI seek an Order requiring the State to pay the latter two organizations attorneys' fees. Defendants object, because they cannot do so within the boundaries of the law, as discussed below.

Section 42 U.S.C. 1988 reads in pertinent part:

> In any action or proceeding to enforce a provision of sections . . . 1983 . . . the court, in its discretion, may allow *the prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs . . .

(Emphasis added.)

On its face, section 1988 indicates that a fee is allowed to a party, rather than the party's lawyer or, as in this case, to a third party not engaged in the practice of law. See Venagas v. Mitchell, 495 U.S. 82 (1990) (reaffirming that it is the civil rights plaintiff, not the civil rights lawyer, who is entitled to a fee award under section 1988); Gilbrook v. City of Westminster, 177 F.3d 839, 873-74 (9th Cir. 1999) (section 1988 requires that attorney fee awards be made directly

[1] It should be noted that some courts have held that attorneys lack standing to argue for attorneys' fees. *See,* Pony v. County of Los Angeles, 433 F.3d 1138 (9th Cir. 2006); Brown v. General Motors Corp., 722 F.2d 1009 (2nd Cir. 1983).

to the prevailing party, with the ultimate disposition of the award dependent on the contract between the lawyer and the client); Certain v. Potter, 330 F.Supp.2d 576 (M.D.N.C. 2004)(fee award accrues to the benefit of the prevailing party, and not the attorney). No less an authority that the United States Supreme Court has issued decisions compelling denial of the instant motion. In Evans v. Jeff D., 475 U.S. 717(1986), the Court noted that the clear language of section 1988, as well as the legislative history preceding its passage, indicates that Congress bestowed on the "'prevailing *party'* (generally plaintiffs) a statutory eligibility for a discretionary award of attorney's fees in specified civil rights actions." Id. at 730. The Court explained:

> While it is undoubtedly true that Congress expected fee shifting to attract competent counsel to represent citizens deprived of their civil rights, it neither bestowed fee awards upon attorneys nor rendered them nonwaivable or nonnegotiable; instead, it added them to the arsenal of remedies available to combat violations of civil rights, a goal not invariably inconsistent with conditioning settlement on the merits on a waiver of statutory attorney's fees.

Id. at 731-32.

Later, in Venegas v. Mitchell, 495 U.S. 82 (1990), the Court reiterated that the fee award under sec. 1988 was intended to run to the party, not the lawyer. In addressing a specific contractual provision before it, the Court stated that "it is the party, rather than the lawyer", who is eligible for fees under the statute. Id. at 87.

In Gilbrook v. City of Westminster, 177 F.3d 839 (9th Cir. 1999), the question of whose name should be on the check was an issue. The answer was, at least under 42 U.S.C. §1988, the party's, not the attorney's. In reaching that conclusion, the Ninth Circuit began its analysis with the clear language of the statute. The determinative phrase "prevailing party" was interpreted to mean just that—that the fee should be allowed to the party, rather than to the party's lawyer. *See also,* Brown v. GMAC, supra ("Section 1988's direction that fees may be awarded to 'the

prevailing party' is plain enough and, absent evidence of a contrary congressional intent (which has not been provided), is dispositive"). Moreover, as discussed below, the payment of an award of attorneys' fees to third parties cannot be required when, as here, such payment runs afoul of state law.

As the above decisions make clear, nothing in section 1988 compels or even supports the payment of the fee award to a third party, especially a non-lawyer.

This Court Should Not Order The State To Commit An Unethical, Illegal Act.

The denial of the instant motion is mandated by statutory and case law controlling upon the State. The decision of the Rhode Island Supreme Court in In Re: Rule Amendments to Rule 5.4(a) and 7.2(c) of the Rules of Professional Conduct, 815 A.2d 47 (R.I. 2002) and an Opinion of the Ethics Advisory Panel issued June 14, 2000, as well as R.I. Gen. Laws §11-27-6[2] and the applicable Rules of Professional Conduct make it clear that the relief sought in the instant motion is impossible. The opinions, based on ethical rules and criminal statutes in this jurisdiction, hold that lawyers may not share court ordered counsel fees with non-profit corporations, specifically, the ACLU. Although ACLU counsel argues that this Court is not bound by the Ethics Advisory Opinion, the Opinion of the Supreme Court of the State of Rhode Island the Rules of Professional Conduct or the statute making it a crime to do what Plaintiffs ask, the State is. Quite simply, the ACLU is asking this Court to order the commission of an unethical, illegal act.

---

[2] "No person, who is not a member of the bar under §11-27-5, shall receive any pay or compensation, directly or indirectly, except any forwarding fee of an attorney at law of another state, for any services of any legal nature that are usually done by attorneys at law pertaining to any action or proceeding in any court or before any referee, master, auditor, commission, division, department, board, or other judicial person or body, or for the preparation any legal instrument, and no court or other judicial person or body shall allow any pay or fee for that service to any person not a member of the bar under §11-27-5, nor shall any executor, administrator, guardian, trustee, fiduciary, or another person employ or pay for the services any person not a member of the bar under §11-27-5."

Counsel has cited no decision of any jurisdiction supporting their request to force the Defendants to commit a criminal act. To the contrary, the reported cases support the denial of the instant motion.

Rules 5.4 and 7.2 of the Rules of Professional Conduct prohibit fee sharing with non-lawyers. It has been a criminal offense to share fees with non-lawyers in this state since at least 1923. See, R.I. Gen. Laws §11-27-6. In 2000, the Rhode Island Ethics Advisory Panel was asked whether the precise payment sought by the instant motion was allowable, and answered "NO". In 2002 the Rhode Island Supreme Court was asked to amend this State's Rules of Professional Conduct to allow direct fee payments to the ACLU, and unequivocally declined to do so. In Re Rule Amendments, supra.

The 2000 Opinion of the Ethics Advisory Panel states that it is ethically improper under Rule 5.4(a) and 7.2(c) for a lawyer who undertakes pro bono representation in RI-ACLU sponsored litigation to pay a percentage of court-awarded attorneys' fees to the RI-ACLU. The Panel read the Rules as clear on their face—attorneys' fees cannot be given to non-lawyers—even pro bono organizations. The same arguments made by counsel here were rejected by the Panel:

> The Panel recognizes that applying the prohibitions of Rule 5.4(a) and of Rule 7.2(c) in this context bears little, if any, relation to the underlying purposes of these two rules, or to the purpose of fee-shifting statutes which encourage the enforcement and advancement of civil liberties. However, it is not within the jurisdiction of the Panel to create new exceptions to the Rules.

Id. (citation omitted).

In 2002, our Supreme Court considered a request from the ACLU to allow such fee payments, and denied it, citing the Rhode Island General Laws and the case of Creditors' Service Corp. v. Cummings, 57 R.I. 291, 190 A.2 (1937). Our Supreme Court

held "...the General Assembly has made and declared to be criminal the very acts and conduct that the petitioners now seek to have sanctioned in their requested amendments to our Rules of Professional Conduct." 815 A.2d at 49.

In addition to the Court's concern over the General Assembly's determination that what the ACLU sought there was criminal, other concerns surfaced. The Court noted that the changes proposed by the ACLU could "encourage the scurrilous practice of ambulance chasing by enterprising individuals masquerading as public-need-nonprofit corporations." Id. at 50. The "mere fact that such could occur if the proposed rule changes were approved" was sufficient reason for Rhode Island's highest court to assume that it would occur. Id. at 51.

The Rhode Island decision addressed the ACLU's argument that the current prohibition violates the First Amendment. Citing a Yale law review article written by a member of the Eastern Missouri ACLU Board of Trustees and a cooperating attorney, the Rhode Island Supreme Court found the First Amendment argument to be "somewhat porous." In rejecting that argument, the Court quoted the Yale article:

> The Supreme Court has never expressly extended First Amendment protection to fee-sharing arrangements with nonprofit groups. On the contrary, the Court has repeatedly refused to decide whether fee-sharing agreements fall within the First Amendment's scope.

815 A.2d at 53 (citation omitted).

The Court in 2002 cited with approval Creditors' Service Corp., where in 1937 it was held that the criminalization of the conduct at issue was within the power of the legislature. Since the practice of law is "affected with a public interest" and since it is "the right and duty of the state to regulate and control it so that the public welfare will be served and promoted" and

that "[l]egislation that subjects an offender to punishment for practicing law while not so authorized is dictated by policy and is in the interest of and for the protection of the public", the Court declined to allow the payment of the type sought here. 815 A.2d at 49, citing Creditors' Serv. Corp. The Court in 2002 suggested to the ACLU that corporations organized pursuant to the Professional Service Corporations Act, R.I. Gen. Laws § 7-5.1-1 are allowed to practice law in this state. It is unclear whether the ACLU has considered this possible solution suggested by the Court.

In the last session of the General Assembly, a bill was introduced to allow fee sharing of the type sought here. The safeguards considered by Rhode Island's legislature were that: (1) the organization had to be one not for profit; (2) the organization is tax-exempt under federal law; (3) the fee award was made in conjunction with a proceeding to advance the purpose of the organization; and (4) the client consents in a written representation that a division of fees will be made. This legislation did not pass.

This prohibition is not unusual. The Restatement (Third) of Law Governing Lawyers §10 (2000) states: "A lawyer or law firm may not share legal fees with a person not admitted to practice as a lawyer." In a comprehensive survey on the issue of multidisciplinary practice, one writer advises that in every state and United States territory except for the District of Columbia, lawyers are prohibited from forming partnerships and sharing fees with non-lawyers. Stacy L. Brustin, *Legal Services Provision Through Multidisciplinary Practice—Encouraging Holistic Advocacy While Protecting Ethical Interests,* 77 U. Colo. L. Rev. 787 (2002). That article also highlights the fact that some state ethics committees have issued opinions interpreting ethical

rules prohibiting fee sharing with non-lawyers.[3] Accord, Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 178 F.Supp.2d 9, 25 (D. Mass. 2001)([if the claimant] is a "non lawyer", then no state would allow him to share fees with a "lawyer").

The ACLU has gone to great effort to establish the laudable goals of that organization. That, however, is irrelevant. The applicable rules, opinions, and statutes prohibit fee sharing with a non-lawyer-period. In Re Weinroth, 100 N.J. 343, 495 A.2d 417 (1985) highlights the potential for abuse if fee sharing is allowed. The New Jersey Disciplinary Rules, like Rhode Island's, prohibit an attorney from rewarding a layperson who had referred a client to the attorney and from sharing a legal fee with a layperson. The New Jersey court wrote:

> It simply forbids the splitting or sharing of a legal fee by an attorney with a lay person, particularly when the division of the fee is intended to compensate such a person for recommending or obtaining a client for the attorney. The policy served by this Disciplinary Rules is to ensure that any recommendation made by a non-attorney to a potential client to seek the services of a particular lawyer is made in the *client's* interest, and not to serve the business impulses of either the lawyer or the person making the referral; it also eliminates any monetary incentive for transfer or control over the handling of legal matters from the attorney to the lay person who is responsible for referring in the client.

Id. at 349, 350 (citations omitted).

New York addressed the fee sharing issue in In Re Lebowitz, 414 N.Y.S. 2d 735, 67 A.D.2d 240 (1979). In that case, the attorney had shared legal fees with a non-lawyer as a inducement to the non-lawyer to refer criminal cases to the law firm in which the attorney was a partner. The attorney was suspended from practice of law for one year.

In a classic case of "ambulance chasing", the Texas Court of Appeals reminds that the overarching concern is the benefit of the public. The agreement in Plumlee v. Paddock, 832

[3] The article cites decisions from Rhode Island, Maryland, Missouri, Maine, Texas, Massachusetts and Ohio. *See,* Brustin, fn. 51.

S.W.2d 757 (Ct. App. TX. 1992) was alleged to involve payment to the owner of an ambulance company for a referral fee and a percentage of attorney's fees for case referrals. That Court held:

> Ordinarily, a contract between an attorney and one not an attorney, providing that the latter shall procure the employment of the former by a third person for the prosecution of suits to be commenced in consideration of a fee to be procured or collected therein, is void as against public policy, independent of statutes prohibiting same.

The reasoning of that Court applies with equal force here:

> The provisions of Rule 5.04(a) express traditional limitations on sharing legal fees with nonlawyers. The principal reasons for these limitations are to prevent solicitation by lay persons of clients for lawyers and to avoid encouraging or assisting nonlawyers in the practice of law." With that in mind, we fail to see how Plumlee believes this court can afford him any relief.

In American Civil Liberties Union/Eastern Missouri Fund v. Miller, 803 S.W.2d 592, cert. den. 500 U.S. 943 (Mo. 1991), that Court likewise held that an attorney could not ethically reimburse the ACLU following an award of attorneys' fees. This reasoning would likewise bar remission of the fees involved in the instant litigation directly to the ACLU. ACLU v. Miller involved a tort and contract action by the ACLU against one of its former attorneys for recoupment of fees paid to the attorney for work performed on an ACLU case. In the decision, the Missouri court noted the "long established rules of our profession which proscribe this condemned practice of lawyers splitting fees with nonlawyers." 803 S.W.2d at 593. As in Rhode Island, Missouri law made it a misdemeanor to divide fees with a non-lawyer. That court held that without question that the criminal statute applied to their situation. As in Rhode Island, there was an ethics advisory opinion prohibiting payment to the ACLU. As in the present case, the ACLU argued that the prohibition infringed on its First Amendment rights. In disagreeing, the Missouri Supreme Court wrote:

> ...the prohibition against fee-splitting does not infringe upon First Amendment rights so as to violate the Constitution. Indeed, a scholarly article by ACLU's trial counsel in this case concedes that 'the Supreme Court has never expressly extended First Amendment protection to fee-sharing arrangements with nonprofit groups.'

803 S.W.2d at 594-5.

The Texas Commission on Professional Ethics issued an Opinion in 1995 that mirror's Rhode Island's. The question presented was "whether the Texas affiliate of a national non-profit public interest law organization can require cooperating attorneys to share a portion or all of their fees collected in a civil rights case with the Texas affiliate?" Tex. Comm. On Professional Ethics, Op. 503, 58 Tex. B.J. 632 (1995). The conclusion, based on the paramount concern of maintaining the integrity of the legal profession, was that "a cooperating attorney ethically cannot agree to share legal fees with a non-profit interest organization where the non-profit public interest organization has referred a case to the cooperating attorney and that attorney has been awarded attorney's fees by judgment or settlement."

This Court is no stranger to the issue. In Rhode Island Medical Society v. Pine, C.A. No. 97-146L (Sept. 20, 2004), this Court found not only that procedural deficiencies prohibited a fee payment to the ACLU, but that it is the Plaintiffs in any particular case who are entitled to the fees in accordance with section 1988.

A Massachusetts ethics opinion regarding a similar prohibition articulated the concerns that prompt fee-sharing restrictions:

> Non-profit organizations comprise a wide variety of entities, from traditional charities to those serving business and labor interests to those supporting a wide variety of political and social causes. One purpose of the prohibition against sharing fees is to prevent the threat to a lawyer's independence that may come from too close an association between the referrer of business and the lawyer. While many cases of donation of fees might involve purely charitable considerations on the part of the lawyer, in other cases a non-profit

> organization might well refer persons to a lawyer because the organization is in a position to "induce" a donation of fees or because the lawyer has made it known that he or she is willing to donate all or part of any fee. Indeed, a lawyer might be willing to donate the entire amount of a court-awarded fee as a "loss leader," in the hope or even with the assurance of obtaining future paying business of this sort.

Massachusetts Committee on Professional Ethics, Opinion No. 97-6.

As for counsel's argument that the rule, the statute and the opinions undermine an act of Congress, that is wholly without merit. Congress intended to have prevailing parties compensated when they were successful and bring the civil rights claim. Congress could easily have inserted a few words authorizing payment of fees to prevailing parties "or their counsel", but it has not. Legislative change is necessary before any such payments may be made in Rhode Island.

Conclusion

In short, because of the plain language of 42 U.S.C. §1988, because of long-standing public policy prohibiting payment of legal fees to nonlawyers, codified since 1923 in the Rhode Island General Laws, because of the Rules of Professional Conduct, because of an Ethics Advisory Opinion, and because of the decision directly on point by the Rhode Island Supreme Court, this Court should deny the pending motion.

Respectfully submitted,

Patrick C. Lynch, Attorney General
David Curtin, Chief Disciplinary Counsel
By Their Attorney

PATRICK C. LYNCH
ATTORNEY GENERAL

Rebecca Tedford Partington

Rebecca Tedford Partington #3890
Deputy Chief--Civil Division
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400 x 2303
Fax (401) 222-2995

Department of Children Youth And Families
By Their Counsel

Kevin J. Aucoin / by RTP

Kevin J. Aucoin, Executive Chief Legal Counsel
Department of Children, Youth and Families
101 Friendship Street
Providence, RI 02903
Tel: (401) 528-3570
Fax: (401) 528-3566

CERTIFICATION

I, the undersigned, hereby certify that a copy of the foregoing document was mailed, postage prepaid, on this 4th day of April, 2006 to the person or persons indicated below:

Carol Collins

Mark W. Freel, Esquire
Edwards Angell Palmer & Dodge, LLP
2800 Financial Plaza
Providence, RI 02903

David C. Fathi, Esquire
Senior Staff Counsel
ACLU Foundation, Inc.
915 15th St. N.W., 7th Floor
Washington, DC 20005

John W. Dineen, Esquire
Yesser, Glasson & Dineen
One Providence Washington Plaza
5th Floor
Providence, RI 02903