UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

INMATES OF THE RHODE ISLAND
TRAINING SCHOOL,

        Plaintiffs,

    v.                           C.A. No. 71-4529-L

PATRICIA MARTINEZ, in her capacity
as DIRECTOR OF THE DEPARTMENT FOR
CHILDREN, YOUTH AND FAMILIES;
PATRICK C. LYNCH, in his capacity
as ATTORNEY GENERAL FOR THE STATE
OF RHODE ISLAND; DAVID CURTIN, in
his capacity as CHIEF DISCIPLINARY
COUNSEL FOR THE STATE OF RHODE
ISLAND,

        Defendants.

DECISION AND ORDER

Ronald R. Lagueux, Senior United States District Judge.

    The antecedents of this dispute date back to 1971, when a group of juvenile inmates of Rhode Island's Boys' Training School sued the state officials who ran the School under 42 U.S.C. § 1983 in an effort to improve the conditions of their confinement at that facility.  In 1972, Plaintiffs, a changing group of boys incarcerated at the correctional facility, were certified as a class by Judge Raymond Pettine of this Court.  In 1973, the parties entered into a Consent Decree which addressed Plaintiffs' concerns including overcrowding, a deteriorated and inadequate physical plant, insufficient staffing, and inadequate academic,

vocational and physical education programs.  A Special Master was
appointed by Judge Pettine to oversee compliance with the Consent
Decree.  Because Plaintiffs were identified as the prevailing
party, attorneys' fees were awarded pursuant to 42 U.S.C. § 1988.
Since that time, attorneys' fees have been paid by the state
officials from the public fisc on an ongoing basis as continued
advocacy has been necessary to ensure compliance with the
original Consent Decree, and to update the Decree in order to
address new and additional problems.

In 2000 after the case was assigned to this writer, the
American Civil Liberties Union Foundation ("ACLU") entered the
case on behalf of the Plaintiffs, with a local cooperating
attorney working with the support and assistance of an attorney
from the organization's National Prison Project.  Soon
thereafter, the Rhode Island Department of Children, Youth and
Families ("DCYF") which operates the Training School, altered its
practice of paying attorneys' fees to Plaintiffs on the advice of
the Attorney General because of concerns over prohibitions
against the payment of legal fees to non-lawyers.  From 2002 to
2004, the fees were paid into an ACLU escrow account.  Since
2004, payment of the fees has been withheld, although awarded by
the Court.

In response, the ACLU and its local affiliate, American
Civil Liberties Union Foundation Rhode Island ("ACLU-RI"), have

brought this matter to a head by filing a Motion to Intervene pursuant to Federal Rule of Civil Procedure 24(a)(2), and a Motion for Approval of the Payment and Disbursement of Attorneys' Fees and Costs.  Defendants object to both Motions.

Background

The parties to this dispute include, on the one side, the Plaintiff class of boys and, now, girls incarcerated at the Training School, and the proposed Intervenors ACLU and ACLU-RI. The ACLU and the ACLU-RI are non-profit corporations created to defend the civil liberties embodied in the United States Constitution.  The other side of this dispute includes DCYF, the Attorney General for the State of Rhode Island, and the State's Chief Disciplinary Counsel (collectively "Defendants").

The focus of the dispute concerns the interpretation and reach of three Rhode Island rules regulating the payment of legal fees.  Rhode Island Rule of Professional Conduct 5.4(a) states that, "A lawyer or law firm shall not share legal fees with a nonlawyer," except in enumerated instances which do not apply to this case.  Rhode Island Rule of Professional Conduct 7.2(c) prohibits lawyers from compensating non-lawyers for recommending their services.[1]  The third prohibition is codified in Rhode

---

[1] Rhode Island Rule of Professional Conduct 7.2(c) states, "A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertising or written communication permitted by this rule and may pay the usual charges of a not-

Island General Laws § 11-27-3, which states:

> Any person, partnership, corporation, or
> association that receives any fee or any part
> of a fee for the services performed by an
> attorney at law shall be deemed to be
> practicing law contrary to the provisions of
> this chapter.

A violation of this section is punishable by a fine, or, in some instances, a prison sentence.  R.I. Gen. Laws § 11-27-14.

The prohibition against fee-sharing with nonlawyers is a longstanding tenet of our country's legal system.  The focus of the public policy concern is that lawyers might arrange for nonlawyers to solicit business for them in exchange for a share of the fees – what is generally referred to as "ambulance-chasing."  The prohibition is also intended to prevent corporations from offering legal services through salaried lawyers, where clients' fees would contribute to the corporate bottom line, thereby compromising lawyer independence.  Generally, while the prohibitions were not necessarily intended to affect organizations such as the ACLU, they are drafted broadly and, when interpreted literally, they do encompass the ACLU, as well as other not-for-profit legal services organizations, in their sweep.

The ACLU employs salaried staff attorneys to litigate

---

for-profit lawyer referral service or other legal service organization."

certain civil rights cases.  If their efforts are successful and
attorneys' fees are awarded, then those fees are turned over to
the ACLU.  Similarly, other ACLU cases are litigated by
cooperating private attorneys, who take the cases on a volunteer,
or *pro bono*, basis.  These attorneys agree at the outset to turn
over some or all of any awarded fees to the ACLU, which pays the
up-front costs associated with the litigation.  The monies
generated through these efforts provide a significant source of
the organization's funding, and support ongoing civil rights
litigation.  This arrangement prevailed in Rhode Island until
recently.

On June 14, 2000, the Rhode Island Supreme Court Ethics
Advisory Panel issued an opinion reviewing Rhode Island Rules of
Professional Conduct 5.4(a) and 7.2(c), in response to an inquiry
from a volunteer cooperating attorney for ACLU-RI.  The Panel
concluded, "It is ethically improper under both Rule 5.4(a) and
Rule 7.2(c) for a lawyer who undertakes pro bono representation
in RI-ACLU sponsored litigation to pay a percentage of court-
awarded attorneys' fees to the RI-ACLU."  Opinion No. 2000-05,
Request No. 801, page 1.  The Panel catalogued the concerns
behind the Rules, and reviewed a formal opinion of the American
Bar Association's Standing Committee on Ethics and Professional
Responsibility (Formal Opinion 93-374), wherein the ABA had
reviewed the same prohibitions, codified by the ABA Model Rules,

-5-

and had come to the opposite conclusion: "that the sharing of
court-awarded fees with sponsoring non-profit organizations does
not present the threat of interference with a lawyer's
independent judgment or financial incentive sufficient to invoke
the prohibition of Model Rule 5.4(a)." Opinion No. 2000-05,
Request No. 801, page 2.  The Rhode Island Supreme Court Ethics
Advisory Panel concurred with the ABA that prohibitions against
fee-sharing "ought not" to apply in the context of RI-ACLU
sponsored *pro bono* litigation because such an application did
nothing to advance the underlying purpose of the rules.
Nevertheless, the Panel opined:

> Notwithstanding the public policy
> considerations that would justify an
> additional exception to Rule 5.4(a) which
> would permit fee-sharing in the situation
> presented in this inquiry, the Panel declines
> to interpret such an exception where the
> language of the rule is clear on its face....
> The Panel is similarly limited by the plain
> meaning of the language of Rule 7.2(c).

Opinion No. 2000-05, Request No. 801, page 3.

Thereafter, the Ethics Advisory Panel petitioned the Rhode
Island Supreme Court to consider amendments to the pertinent
rules that would permit lawyers to share court-awarded fees with
non-profit corporations in the kinds of situations such as the
one that had provided the occasion for inquiry No. 801.  In re
Rule Amendments to Rules 5.4 and 7.2(c) of the Rules of
Professional Conduct, 815 A.2d 47 (R.I. 2002).  However, the

-6-

Rhode Island Supreme Court declined to adopt such amendments in the face of the ban on the same conduct imposed by R.I. Gen. Laws § 11-27-3.

Citing the General Assembly's power to prohibit any act as a crime as long as that exercise of power does not violate the federal or State constitutions, the Court wrote,

> As a matter of comity, we believe this Court should avoid enacting rules that would conflict with the Legislature's policy determination in this area....
> Because the present legislative ban on attorney fee sharing with *inter alia* non-profit corporations (§ 11-27-3) does not violate any constitutional provisions, <u>Creditors' Service Corp. v. Cummings</u>, 57 R.I. 291, 300 (1937), we believe we should respect the legislative determination that such conduct is sufficiently detrimental as a policy matter to be worthy of criminal sanctions.

<u>Id.</u> at 49.

The Court added that the proposed amendments might very well encourage "the scurrilous practice of ambulance chasing by enterprising individuals masquerading as public-need-nonprofit corporations," because forming a nonprofit corporation that conformed to the amendment's definition was a relatively easy project, even for non-residents. <u>Id.</u> at 50. On the other hand, the Court continued, *pro bono* attorneys, genuinely motivated to litigate in the public interest, deserve to receive any court-awarded fees; and, moreover, they are free to donate those fees

-7-

to any organization of their choosing.  Id. at 51.

The Rhode Island Supreme Court endorsed the conclusion of Ethics Advisory Opinion No. 2000-05, rather than its recommendation.  The Court was unconcerned that the Ethics Advisory Opinion conflicted with the position of the American Bar Association, because the American Bar Association had emphasized in its opinion that the laws and rules of individual jurisdictions must control on the issue of fee- sharing.  Id. at 52.  Likewise, the Supreme Court dismissed petitioners' First Amendment concerns as lacking any sound basis in law or precedent.  Id. at 53.

However, the last word, as of this writing, has been issued by the Rhode Island General Assembly, which amended both Rhode Island General Laws § 11-27-3[2] and § 11-27-6[3] during its most recent legislative session in order to permit legal fee-sharing with non-profit organizations under certain conditions.  These

---

[2] A section (b) was added to R. I. Gen. Laws § 11-27-3, which states: "A lawyer or law firm may agree to share a statutory or tribunal-approved fee award, or a settlement in a matter eligible for such an award, with an organization that referred the matter to the lawyer or law firm if: (i) the organization is one that is not for profit; (ii) the organization is tax-exempt under federal law; (iii) the fee award or settlement is made in connection with a proceeding to advance one or more of the purposes by virtue of which the organization is tax-exempt; and (iv) the client consents in a written representation that a division of fees will be made."

[3] Language was added to R. I. Gen. Laws § 11-27-6 to exempt "an organization, or its representatives, meeting the criteria contained in subsection 11-27-3(b)."

-8-

amendments were enacted on July 14, 2006, and became effective upon passage.  Although the amendments became law after the filing of the parties' memoranda in this case, the Court feels certain that there is no real dispute that the fee arrangements previously and routinely undertaken by the ACLU and ACLU-RI are no longer prohibited by the Rhode Island General Laws.  The Rhode Island General Assembly has clearly established a policy of allowing these fee arrangements.  However, the statutory amendments have no retroactive force, and leave unresolved the disposition of the fees generated on behalf of Plaintiffs herein during the period between the Rhode Island Supreme Court's decision in In re Rule Amendments and September 30, 2005, when these Motions were filed.

The fees that are the subject of the present dispute total $201,578.89, and comprise $143,246.07 currently in the ACLU's escrow account, and $58,332.82, the amount previously agreed upon and awarded but withheld by Defendants.

## Motion to Intervene

As a threshold matter, the Court must first address the Motion to Intervene, pursuant to Federal Rules of Civil Procedure 24(a)(2), brought by the ACLU and ACLU-RI.  The ACLU and ACLU-RI seek to intervene in this lawsuit as a matter of right, under the portion of the Rule which states:

> Upon timely application, anyone shall be
> permitted to intervene in an action when the

> applicant claims an interest relating to the
> property or transaction which is the subject
> of the action and the applicant is so
> situated that the disposition of the action
> may as a practical matter impair or impede
> the applicant's ability to protect that
> interest, unless the applicant's interest is
> adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).

The ACLU and ACLU-RI seek to intervene for the limited and sole purpose of resolving the fee-sharing dispute.  They argue that they have an undeniable interest in the property which is the subject of the motion, and that their interest will not be adequately represented by the existing parties.  For their part, Defendants object to the Motion, arguing that the ACLU and ACLU-RI are not proper parties with requisite standing, and that the outcome of the underlying case will not affect the ACLU "one bit."

The First Circuit has extrapolated a four-part test from the Federal Rule.  To intervene as a matter of right, a party must show that:

> (1) it timely moved to intervene;
> (2) it has an interest relating to the
> property or transaction that forms the basis
> of the ongoing suit;
> (3) the disposition of the action threatens
> to create a practical impediment to its
> ability to protect its interest; and
> (4) no existing party adequately represents
> its interests.

B. Fernandez & Hnos. v. Kellogg USA, Inc., 440 F.3d 541, 544-545

(1st Cir. 2006).

The Motion presented by the ACLU and ACLU-RI, wherein attorneys for the Plaintiff class move to intervene as parties in the underlying lawsuit, is not a conventional motion to intervene.  <u>See, e.g.</u>, <u>Daggett v. Commission on Governmental Ethics</u>, 172 F.3d 104 (1st Cir. 1999).  However, given the history of the ACLU and ACLU-RI's long and persistent effort to obtain a resolution of this issue,[4] the Court is inclined to grant their Motion to intervene in this case.  Rather than engaging in a convoluted analysis in order to fit the facts of this Motion's square peg into the Rule's round hole, the Court will fall back on the "reasonable measure of latitude" that has been afforded by the First Circuit to the District Court in the practical application of Rule 24(a)(2).  <u>Daggett</u>, 172 F.3d at 113.  This approach was explained by Judge Selya in <u>Public Service Co. of New Hampshire v. Patch</u>:

> The application of this [four-part test] framework to the divers factual circumstances of individual cases requires a holistic, rather than reductionist, approach.  The inherent imprecision of Rule 24(a)(2)'s individual elements dictates that they "be read not discretely, but together," and always in keeping with a commonsense view of

---

[4] Last year, the ACLU filed a declaratory judgment action in this Court in order to resolve the same issue, <u>American Civil Liberties Union, et al. v. Patrick Lynch, et al.</u>, C. A. No. 05-060.  That action resulted in a Consent Stay Order when District Judge Mary Lisi recommended that the parties resolve the dispute in a case where the disbursement of legal fees was pending.

the overall litigation.

136 F.3d 197, 204 (1st Cir. 1998)(citations omitted).  Because the Court determines that ACLU and ACLU-RI's intervention in this case for the limited purpose of resolving the fee dispute comports with 'a commonsense view of the overall litigation,' the Court grants the Motion to Intervene.  Henceforth herein where appropriate, the ACLU and ACLU-RI will be referred to collectively as the "ACLU Plaintiffs."

<u>Analysis</u>

<u>The dispute over attorneys' fees</u>

Federal civil rights law, codified under 42 U.S.C. § 1988 (b), permits the court to award reasonable attorneys' fees to the prevailing party in "any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title..."  The Plaintiff class of Boys' Training School inmates prevailed in their § 1983 action, and attorneys' fees were awarded pursuant to this statutory provision.  As explained above, these fees were routinely paid over until the Rhode Island Supreme Court's decision in <u>In re Rule Amendments</u> raised the specter that continued payment would violate Rhode Island law. The ACLU Plaintiffs move for Court approval of the disbursement of the fees, arguing that the award of attorneys' fees is an integral part of the operation of the nation's civil rights laws which are enforceable by this Court even in the face of state

-12-

statutory prohibitions.   Their arguments rely on the protections
afforded by the First Amendment and the Supremacy Clause.
Defendants reply that the ACLU and ACLU-RI are not the prevailing
party as defined by § 1988; and that, at any rate, Defendants are
prohibited by state law from making the payment to the ACLU and
ACLU-RI.

<u>The prevailing party</u>

At the outset, Defendants argue that the ACLU and ACLU-RI
are not entitled to attorneys' fees because the statute provides
that the award goes to prevailing parties, not to their attorneys
or to the legal services organization that represents them.   In
this case, Defendants' argument presumably leads to the position
that the fees should instead go directly to the Plaintiff Class,
juveniles incarcerated or previously incarcerated for breaking
the law.   Defendants' argument, though it is not without support,
flies in the face of common sense and practicality.

Defendants rely on <u>Venegas v. Mitchell</u>, 495 U.S. 82 (1990),
to bolster their argument that fees go to the prevailing party
not to the prevailing party's attorney.   However, analyzed in its
entirety, <u>Venegas</u> does not stand for the proposition that a
successful plaintiff should receive court-awarded legal fees
directly.   Plaintiff Venegas had entered into a contingent fee
agreement with his attorney to pay him 40% of the gross amount of
any recovery in his police misconduct litigation.   Venegas

-13-

obtained a judgment in his favor for $2.08 million.  Under 42
U.S.C. § 1988, the court made an award of attorneys' fees in the
amount of $117,000, based on a reasonable hourly rate multiplied
by the number of hours spent by the attorney on the case.  In
ruling that the attorney was entitled to the court-awarded
attorneys' fees plus any amount over that as provided by the
contingent fee agreement, the Supreme Court wrote,

> In sum, § 1988 controls what the losing
> defendant must pay, not what the prevailing
> plaintiff must pay his lawyer.  What a
> plaintiff may be bound to pay and what an
> attorney is free to collect under a fee
> agreement are not necessarily measured by the
> "reasonable attorney's fee" that a defendant
> must pay pursuant to a court order.

Id. at 90.

First Circuit civil rights jurisprudence lends further
support to the notion that, while legal fees awards are made to
the prevailing party, there is a tacit, or sometimes even
explicit, expectation that those fees will go directly to the
attorneys.  In Reynolds v. Coomey, 567 F.2d 1166 (1st Cir. 1978),
a black female plaintiff was the prevailing party in an
employment discrimination suit.  The district court awarded legal
fees to her private attorney, but denied the claim for fees
brought by co-counsel from the NAACP Legal Defense Fund.  The
First Circuit reversed the denial of fees, stating, "We see no
basis for omitting NAACP Legal Defense Fund.  Attorney's fees

-14-

are, of course, to be awarded to attorneys employed by a public interest firm or organization on the same basis as to a private practitioner." 567 F.2d at 1167. In Lund v. Affleck, 587 F.2d 75 (1st Cir. 1978), the Court awarded legal fees to Rhode Island Legal Services, a federally-funded legal aid organization, for its work on behalf of the prevailing parties in three § 1983 actions. In Palmigiano v. Garrahy, 616 F.2d 598 (1st Cir. 1980), the Court held that three staff attorneys employed by the ACLU's National Prison Project should be compensated at the same rate as the private local counsel, all of whom represented the prevailing party - inmates at Rhode Island's Adult Correctional Institutions. The Palmigiano Court reviewed its prior precedents and concluded, that "public interest organizations (whether privately or publicly funded)[are to] be awarded attorney's fees under the Fees Act on the same basis as private practitioners." 616 F.2d at 601. In light of these precedents, this Court determines that the fact that the ACLU Plaintiffs are not literally the prevailing parties poses no impediment to their receipt of the fee award.

First Amendment

ACLU Plaintiffs argue that Rhode Island's prohibition on fee-sharing with non-lawyers restricts their pursuit of civil rights litigation and, therefore, violates the free speech protections provided by the First Amendment. In support of their

argument, Plaintiffs rely on two Supreme Court cases, <u>NAACP v.
Button</u>, 371 U.S. 415 (1963), and <u>In re Primus</u>, 436 U.S. 412
(1978).

<u>NAACP v. Button</u> involved a challenge by the civil rights
group's legal defense fund to Virginia's statutory prohibition
against the solicitation of legal business.  In its efforts to
bring about the desegregation of Virginia public schools, the
NAACP met with parents to explain the legal process that it was
undertaking to challenge segregation, and to encourage
participation in the organization's efforts.  To the extent that
the activities at these meetings were characterized as
"solicitations," they ran afoul of Virginia's prohibition.  The
NAACP challenged the statute, arguing that it abridged its First
Amendment freedom "to associate for the purpose of assisting
persons who seek legal redress for infringements of their
constitutionally guaranteed and other rights."  371 U.S. at 428.
The State responded that the prohibition against solicitation
fell "within the traditional purview of state regulation of
professional conduct."  <u>Id.</u> at 438.

The Supreme Court sided with the NAACP, holding that the
NAACP's activities were "modes of expression and association
protected by the First and Fourteenth Amendments..."  Id. at 428-
429.  The Court went on,

> In the context of NAACP objectives,
> litigation is not a technique of resolving

> private differences; it is a means for
> achieving the lawful objectives of equality
> of treatment by all government, federal,
> state and local, for the members of the Negro
> community in this country.

Id. at 429.  Moreover, the Court concluded, the State's interest
in regulating the legal profession was insufficiently compelling
to justify a broad restriction on First Amendment freedoms.  Id.
at 438.

Plaintiffs also cite In re Primus, 436 U.S. 412 (1978), in
support of their First Amendment argument.  In that case, a South
Carolina-based lawyer for the ACLU met with women who had been
sterilized as a condition of receiving public assistance, and
later informed one woman, by letter, that she could obtain free
legal representation from the ACLU.  The lawyer was subsequently
reprimanded by the South Carolina Supreme Court for violating its
disciplinary rule against the solicitation of legal clients.

In framing the issue for analysis, the Court emphasized
that, while Primus had indeed engaged in a solicitation, she had
been motivated by political beliefs and a commitment to civil
rights objectives, rather than by financial gain.  Id. at 422.
Despite the State's arguments to the contrary, the Court
determined that the activities and aims of the ACLU were similar
to those of the NAACP, as previously found in Button; and that
those activities constituted protected modes of political
expression and association.  Id. at 428.

-17-

> Appellant's letter of August 30, 1973, to
> Mrs. Williams thus comes within the generous
> zone of First Amendment protection reserved
> for associational freedoms.  The ACLU engages
> in litigation as a vehicle for effective
> political expression and association, as well
> as a means of communicating useful
> information to the public.  As _Button_
> indicates...the efficacy of litigation as a
> means of advancing the cause of civil
> liberties often depends on the ability to
> make legal assistance available to suitable
> litigants.

_Id._ at 431 (citations omitted).

The appropriateness of these two cases to Plaintiffs' argument is obvious.  Like the plaintiffs in _Button_ and _Primus_, the ACLU Plaintiffs herein are using a class action lawsuit to advance the cause of civil liberties for a group of litigants, juvenile prison inmates, whose access to private legal representation is limited.  They are motivated not by pecuniary gain, but by their political beliefs and their commitment to securing civil rights for underprivileged members of our society.  However, the Rhode Island disciplinary rules and statute at issue do not aim to quiet the voice of the ACLU altogether.  A restriction that achieved such a result would clearly be impermissible under _Button_ and _Primus_.

The sole effect of the Rhode Island rules is to restrict the compensation the ACLU Plaintiffs may receive when they prevail in a lawsuit.  No one could argue convincingly that it is possible to undertake a lawsuit without financial expenditure.

-18-

Consequently, it would be reasonable to argue that, because the
ACLU relies on court-awarded legal fees as a significant source
of funding for its activities, cutting off this funding results
in a restriction as chilling to its First Amendment rights as a
prohibition against solicitation.  However, this Court will stop
short of arriving at this conclusion, choosing instead to resolve
this case on other grounds.

In his concurring opinion in <u>Ashwander v. Tennessee Valley
Authority</u>, 297 U.S. 288 (1936), Justice Louis Brandeis set forth
rules that the Supreme Court developed for its use in
constitutional cases.  This Court turns now to Rule Four for
guidance:

> 4.  The Court will not pass upon a
> constitutional question although properly
> presented by the record, if there is also
> present some other ground upon which the case
> may be disposed of.  This rule has found most
> varied application.  Thus, if a case can be
> decided on either of two grounds, one
> involving a constitutional question, the
> other a question of statutory construction or
> general law, the Court will decide on the
> latter.

297 U.S. at 347.  <u>See also</u>, <u>Greenless v. Almond</u>, 277 F.3d 601,
607 (1st Cir. 2002).

<u>The Supremacy Clause</u>

In selecting the Supremacy Clause as grounds for this
decision, this Court realizes that it is eschewing one

constitutional issue in favor of another.[5]   However, as the
breadth, force and power of the Supremacy Clause has been clearly
defined, the Court will be following a familiar and well-
established course in deciding the dispute on these grounds.

The Supremacy Clause declares federal law to be the Supreme
Law of the Land, allowing federal law to supercede, or preempt,
state law when there is a conflict between the two.   Hines v.
Davidowitz, 312 U.S. 52, 66 (1941).   Federal preemption may be
expressly mandated by Congressional act, or implicitly indicated
by the intent and sweep of the federal law.   Implied preemption,
"a more subtle creature," may be inferred when the federal law
demonstrates an intent to cover the regulatory field, when the
federal interest in an area is dominant, or when there is an
actual conflict between federal and state law.   French v. Pan Am
Express, 869 F.2d 1, 2 (1st Cir. 1989).   "Put another way, a
state law or regulation cannot take root if it looms as an
obstacle to achievement of the full purposes and ends which
Congress has itself set out to accomplish."   Securities Industry
Ass'n v. Connolly, 883 F.2d 1114, 1118 (1st Cir. 1989) (citing
Schneidewind v. ANR Pipeline Co., 485 U.S. 293 (1988)).

To determine whether the Rhode Island prohibitions against
fee-sharing pose a conflict with federal law, it is necessary to

---

[5] United States Constitution, Article VI, Section 1, Clause
2.

examine the purposes of 42 U.S.C. § 1988.  In a case involving

the award of fees to a prevailing party in a § 1983 lawsuit,

Judge Torres of this Court wrote,

> The purpose of awarding an attorney's fee to
> a prevailing plaintiff is to encourage
> individuals to vindicate the policies under-
> lying the civil rights and anti-
> discrimination laws by pursuing legitimate
> claims of constitutional deprivations and
> unlawful discrimination even though the
> pecuniary damages are modest and/or the
> claimant lacks the resources to pay counsel,
> and to encourage attorneys to accept such
> cases.

Carter v. State of R.I. Dept. of Corrections, 25 F. Supp. 2d 24,

25 (D.R.I. 1998).  In King v. Greenblatt, 560 F.2d 1024, 1026

(1st Cir. 1977), the First Circuit reviewed § 1988's legislative

history and cited language from the Congressional record:  "Not

only has Congress now provided for attorney's fees awards in

civil rights cases, the Act's legislative history leaves no doubt

that Congress intended not only that the fees be adequate enough

to 'attract competent counsel' but 'that the amount ... [would]

be governed by the same standards which prevail in other types of

equally complex Federal litigation such as antitrust cases.'"

It is clear that the award of attorneys' fees is, moreover,

an integral part of the operation of the entire scheme of federal

civil rights legislation.  The First Circuit wrote in Palmigiano

v. Garrahy, 616 F.2d 598, 602 (1st Cir. 1980),

> Furthermore, we think that allowing full

> compensation for the services of public
> interest lawyers serves the clearly expressed
> legislative purpose of encouraging private
> enforcement of civil rights laws. As the
> district court pointed out, the National
> Prison Project, like other such
> organizations, has finite resources, and a
> full fee award will enable it to undertake
> further civil rights litigation.

See also, Lund v. Affleck, 442 F. Supp. 1109, 1111 (D.R.I. 1977).

This Court concludes that allowing the State of Rhode Island, in reliance on R.I. Gen. Laws § 11-27-3, to withhold attorneys' fees due the ACLU Plaintiffs would frustrate the articulated purposes of sections 1983 and 1988, which include, *inter alia*, attracting competent counsel to pursue civil rights litigation on behalf of indigent people.  Consequently, to the extent that the state statute operates to prevent the ACLU Plaintiffs from collecting the attorneys' fees in dispute herein, it is inconsistent with 42 U.S.C. § 1988 and is preempted as a matter of federal law.

### The disciplinary rules

The Court therefore holds that R.I. Gen. Laws §§ 11-27-3 and 11-27-6 are preempted by 42 U.S.C. § 1988, to the extent that the state statute prohibits the payment of legal fees to the ACLU Plaintiffs in the present case.  The disciplinary rules, Rhode Island Rules of Professional Conduct 5.4(a) and 7.2(c), pose a less formidable obstacle.

Notwithstanding this Court's local rule, LR Gen 208, which

-22-

imports the Rhode Island Rules of Professional Conduct to our forum, this Court has always served as the ultimate authority on disciplinary matters for the attorneys who practice here. <u>In re Egbert</u>, 184 F.R.D. 26, 29-30 (D.R.I. 1999). Puerto Rico's District Court has also adopted the Commonwealth's code of professional responsibility. That Court, while ruling on a case concerning an attorney's conflict of interest, explained that the interpretation of the disciplinary rule made by the Supreme Court of the Commonwealth was "useful," but,

> ...it is essential to understand the primary responsibility for supervising the conduct of the attorneys who practice before this court lies precisely with this forum. This authority stems from the Court's inherent power to control and supervise the proceedings and the attorneys who practice before it.

<u>Figueroa-Olmo v. Westinghouse Elec. Corp.</u>, 616 F. Supp. 1445, 1450 (D.P.R. 1985).

Consequently, the Court holds that the disciplinary rules, Rhode Island Rule of Professional Conduct 5.4(a) and 7.2(c), likewise do not impede the payment of legal fees to the ACLU Plaintiffs in this case.

### Conclusion

For the reasons stated above, the Court grants the ACLU Plaintiffs' Motion to Intervene, as well as the Motion for Approval of the Payment and Disbursement of Attorneys' Fees and

Costs.  Counsel for the ACLU Plaintiffs shall draft an order
authorizing the disbursement of the fees and costs held in escrow
and providing for the payment of the fees and costs that have
been withheld by Defendants.

It is so ordered.


Ronald R. Lagueux
Senior United States District Judge
December,  5  , 2006